**Tommy WICKER, Larry Jackson, and Mel Hensley, Plaintiffs,**

v.

**Tommy L. GOODWIN, Individually and In His Official Capacity as Director of the Arkansas State Police; Winston Bryant, In His Official Capacity as Attorney General of the State of Arkansas; and Bill Clinton, In His Official Capacity as Governor of the State of Arkansas, Defendants.**

**No. LR–C–90–139.**

United States District Court, E.D. Arkansas, W.D.

Dec. 14, 1992.

Robert A. Newcomb, Little Rock, AR, Arthur L. Allen, Las Vegas, NV, for plaintiffs.

James Mark Lewis, Jonesboro, AR, Frank J. Wills, III, Little Rock, AR, for defendants.

## AMENDED MEMORANDUM AND ORDER

STEPHEN M. REASONER, Chief Judge.

Three Arkansas State Troopers brought this action seeking to invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983, to secure protection of their civil rights and to redress the deprivation of the rights secured them under the First and Fourteenth Amendments to the Constitution of the United States.

This case involves the constitutionality of an Arkansas statute, ARK.CODE ANN. § 12–8–205,[1] which requires members of the Arkansas State Police "to remain constantly aloof from politics." The three plaintiffs were found to have violated ARK.CODE ANN. § 12–8–205 and were disciplined by their chief commanding officer.[2] The three named defendants are Arkansas State Police Director, Colonel Tommy L. Goodwin, Attorney General Winston Bryant, and Governor Bill Clinton, all named in their official capacities.

A bench trial was held on April 13, 1992, at which time the Court heard testimony of witnesses and arguments of counsel in this matter. Thereafter, the Court took all evidence under advisement pending the issuance of its findings of facts and conclusions of law.

## BACKGROUND

Plaintiffs, Arkansas State Troopers, Tommy Wicker, Larry Jackson, and Mel Hensley received ten-day suspensions without pay as a result of certain events surrounding the election campaign of Richard Busbee, a former Arkansas State Trooper and candidate for the 1988 Democratic nomination for Sheriff of Crittenden County, Arkansas.

---

1. Ark.Code Ann. § 12–8–205 is entitled "Political activities." This statute states in pertinent part that:

   (a) The members of the Arkansas State Police shall be required on penalty of discharge to remain constantly aloof from politics.

   (b) They shall not be at any time detailed to perform any work pertaining to the political activities affecting either a candidate or measures but shall devote their entire time to the duties herein set forth.

   (c) The members of the Arkansas State Police shall not be required nor counseled to make, solicit, or prescribe contributions toward and for any political campaign of whatsoever nature.

   (d) The members of the Arkansas State Police shall not be required, nor permitted, directly or indirectly, to participate or assist in any manner in any political campaign of whatsoever nature in behalf of any candidate or measure.

   (e) They shall not voluntarily perform any work or service in connection with any political campaign of whatsoever nature, nor shall they publicly and openly espouse the candidacy of any man or measure.

   (f) It is declared to be the intention of the General Assembly to prohibit members of the Arkansas State Police from taking part, voluntarily or otherwise, directly or indirectly, from participating in any political campaign or soliciting the support thereto, votes, or contributions for any candidate or measure.

   (g) The violation of these provisions shall be sufficient for the removal of any member of the Arkansas State Police force. However, nothing in this section shall interfere with the rights of any member of the Arkansas State Police to vote for any candidate or upon any issues as his reason and conscience may dictate.

2. Following a complaint lodged by State Senator Kent Ingram concerning the political involvement of three state troopers in the Crittenden County Sheriff's race, the Troop Commander of the Forrest City District referred the matter to the Staff Disciplinary Board who unanimously recommended to Colonel Tommy Goodwin, Director of the Arkansas State Police, that all three plaintiffs be terminated as a result of their involvement. Colonel Goodwin, however, rejected the Board's recommendation imposing instead a ten-day suspension without pay for each plaintiff as a result of their violations of Ark.Code Ann. § 12–8–205.

Sergeant Tommy Wicker, a state trooper with over twenty years of service, was found to have violated ARK.CODE ANN. § 12–8–205 by ·accompanying his wife to the Busbee "campaign kick-off" and returning to campaign headquarters to con-· gratulate Busbee on election night after receiving a telephone call confirming Busbee's victory.[3] Corporal Larry Jackson, also a veteran state police officer, was found to have violated ARK.CODE ANN. § 12–8–205 for contributing $249.50 to the Busbee campaign via a check issued by his. business partnership and drawn on a partnership account.[4] Corporal Mel Hensley, also a state trooper with over twenty years experience, received a ten-day suspension without pay for erecting yard signs, having a bumper sticker displayed on a privately owned ·vehicle,[5] and visiting Busbee campaign headquarters where his wife served as campaign coordinator.

The history and related events which took place prior to the 1988 Crittenden County Sheriff's race are both beneficial and essential. Section 6(b) of Act 231 contains the provisions at issue in this action, ARK.CODE ANN. § 12–8–205, which has re-

mained virtually unchanged since its passage into law in 1945. However, in January, 1986, Arkansas Governor Bill Clinton issued Governor's Policy Directive # 9 [6] ("Governor's Directive") intending to clarify § 12–8–205. This directive informed state employees of their right to participate in political activities while off duty and not using state equipment. The Governor's Directive was distributed to the various Troop Captains of the Arkansas State Police by its Director with a written directive to "post at Troop headquarters and be sure all personnel are aware of this."·

The Court is persuaded that at the time Governor Clinton drafted his Directive, it was intended to encompass all state employees, including the Arkansas State Police.[7] However, to the extent the Governor's Directive allows state police involvement in political activity while in an off-duty status, it is in conflict with the provisions of ARK.CODE ANN. § 12–8–205.[8] Nevertheless, the Governor's Directive has been observed in practice as "the law"—as opposed to the statute—regarding state po-

---

**3.** Sergeant Wicker was not on duty, in uniform, or using a state vehicle at the time these events took place.

**4.** The contribution was tendered by· check, signed and submitted by Ms. Phylis Parks, Mr. Jackson's business partner. When Ms. Parks informed Jackson of her intent to make a monetary contribution to the Busbee campaign he requested she keep the contribution below $250.00 in order to avoid the possible publication of his name as a campaign contributor.

**5.** The Hensleys jointly owned a car and pickup truck. Mrs. Hensley testified she considered the car to be "her car," and therefore, had placed a campaign sticker on the bumper to encourage other people to do likewise. Captain Hensley testified he subsequently removed the bumper sticker from "his wife's car" when directed to do so by his commanding officer.

**6.** *Governor's Policy Directive # 9* which is entitled "State Employee Political Activity," contains the following two paragraphs which are relevant to this case:

1) State employees can, should and are encouraged to participate in the election process so long as assistance to candidates is rendered on the employee's own time and State property is not involved. Employees are not to

endorse candidates,. including the Governor, in their official capacity as State employees. A person's status as an employee of the State is public knowledge. Public endorsements of a candidate can easily be interpreted as endorsements of an official capacity.

2) The legal provisions can be briefly summarized as follows:

a) State employees are prohibited from engaging in partisan political activity during the hours they are performing work for and being paid by an agency of State government.

b) Political banners, posters or literature should never be allowed to be displayed on or in any State office.

c) Political bumper stickers or decals should never be displayed on or in State cars; State vehicles must not be used during or after working hours to promote or assist the candidacy of any person in any way. State employees may not display political advertising on personal vehicles when using these vehicles in the performance of official duties for which they shall be reimbursed by the State.

**.7.** *See supra* note 6.

**8.** *See* § 12–8–205(d), (e), & (f). These para-
. graphs indicate such political activity, even during off duty hours, is prohibited.

lice involvement in political activity since its issuance in 1986.

Apparently, the reason for reverting back to the language of the statute during the 1988 Crittenden County Sheriff's race was largely due to the persistence of Arkansas State Senator Kent Ingram. Senator Ingram, apparently a supporter of the opposing candidate, filed a formal complaint with Troop Captain J.G. Pinson which resulted in the investigation and ultimate suspension of the plaintiffs.

Plaintiffs contend ARK.CODE ANN. § 12–8–205 should be declared unconstitutional as it violates their rights secured under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. They seek compensatory damages for loss of pay as well as declaratory and injunctive relief.

## DISCUSSION

### I.

Plaintiffs first argue § 12–8–205 is overbroad and unduly restrictive of their First Amendment rights. In support of their position, plaintiffs assert the statute fails to distinguish partisan and non-partisan political campaigns, instead prohibiting participation in any type of political activity ranging from ballot measures to candidate elections. Further, plaintiffs contend the statute appears to cover ballot measure campaigns and lobbying of legislators and, therefore, could not be more restrictive unless it also deprived them of their right to vote.

■ The First Amendment encompasses an individual's right of both political expression and association. *Buckley v. Valeo*, 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (per curiam). Therefore, when restricting or burdening the exercise of such, it has long been a requirement that statutes be narrowly tailored and

represent a considered legislative judgment that a particular mode of expression must give way to other compelling needs of society. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). Despite their preferred position in our constitutional scheme, however, First Amendment rights are not absolute and must, of necessity, yield on occasion to the demands of public safety. *Reeder v. Kansas City Bd. of Police Comm'rs.* ("*Reeder I*"), 733 F.2d 543, 547 (8th Cir.1984). Additionally, where conduct and not merely speech is involved, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917.

■ The Court observes that until now it has evidently been the judgment of Arkansas' legislature, executive, and citizens that participation in political campaigns and related activities by Arkansas State Troopers should be restricted. Additionally, with regard to the restrictions imposed by § 12–8–205, they favor no particular party, group, or points of view, but apply equally to all types of political activities therein described. Furthermore, the restrictions imposed do not attempt to censure the political opinions or beliefs of any trooper, nor interfere with or influence his or her right to vote.

While the United States Supreme Court has failed to address the constitutionality of certain restraints present in the statute at bar, the Court has upheld similar restrictions of a comprehensive and substantial nature regarding activities of both federal and state officials lying at the core of the First Amendment.[9] Moreover, recent decisions imply restrictions such as those contained in § 12–8–205 would not be treated differently. *See, Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708

---

9. *See, e.g., United States Civil Service Comm'n v. Nat'l. Ass'n. of Letter Carriers, AFL–CIO*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (Court upheld constitutionality of "Hatch Act" which prohibited certain federal employees from actively participating in political campaigns and management stating the restrictions were not

impermissible vague or overbroad); *Broadrick*, 413 U.S. at 601, 93 S.Ct. at 2908 (Court upheld Oklahoma statute prohibiting state employees from actively engaging in various types of political activities, including taking an active part in the management or affairs of any political party or political campaign).

(1976); *Reeder I*, 733 F.2d at 543. As stated by the Court in *Pickering v. Bd. of Educ.*:

> [T]he State has an interest as an employer in regulating the speech of its employees that differs significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

A state trooper is often the most conspicuous representative of the state government to a large percentage of the population, particularly those residing in rural communities who may view the trooper as a symbol of stability and authority. Accordingly, in balancing the interests of the plaintiffs and the interest of the State, the Court finds the balance weighted in favor of the State. Section 12–8–205 serves several valid and important interests, among those being to guarantee troopers job security, free from the vicissitudes of the election process; to avoid the appearance of political partisanship on the part of the Arkansas State Police; and to promote a harmonious working relationship between the State Police, citizens, and political officials throughout the State. As applicably stated by the Court in *Reeder I*:

> People who become public employees receive certain benefits and undertake certain duties. One of those duties may require the surrender of rights that would otherwise be beyond the reach of governmental power. This is especially true in the case of the police, whose duty it is to keep the peace by force of arms if necessary. "A state may demand of its police officers a more exacting standard of conduct than it could validly impose by criminal statute on citizens in general." *Vorbeck v. Schnicker*, 660 F.2d 1260 (8th Cir.1981) (Arnold, J., concurring), *cert. denied*, 455 U.S. 921 [102 S.Ct. 1278, 71 L.Ed.2d 462] (1982). It is proper for a

state to insist that the police be, and appear to be, above reproach, like Caesar's wife.

733 F.2d at 547.

## II.

■ Plaintiffs additionally contend Ark. Code Ann. § 12–8–205 should be declared unconstitutionally vague in violation of the Fourteenth Amendment. It is a well established tenet of constitutional law that a statute which either forbids or requires the doing of an act in terms so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). This prohibition against vagueness has been extended to certain employment regulations and penal statutes, such as the one at bar, to prohibit them from becoming effective deterrents to the exercise of free speech. *Broadrick*, 413 U.S. at 601, 93 S.Ct. at 2908.

Vagueness, however, is a matter of degree and context. "The root of the vagueness doctrine is a rough idea of fairness." *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). It is not a principle designed to convert the practical problems of drawing statutes—both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning—into a constitutional dilemma. *Id.*

■ The Court finds with little effort that § 12–8–205 is not so vague "that men of common intelligence must necessarily guess at its meaning." Indeed, whatever problems may exist with § 12–8–205, it is impractical for plaintiffs to suggest the statute fails to give adequate warning of the types of prohibited activities or the consequences for engaging in such. In plain language, the statute prohibits state troopers from directly or indirectly participating or assisting "in any manner in any political campaign of whatsoever nature in

behalf of any candidate or measure." [10] It forbids state troopers from making, soliciting or prescribing "contributions toward and for any political campaign of whatsoever nature." [11] It further prohibits troopers from being detailed to perform work "pertaining to the political activities affecting either a candidate or measures." [12]

The statute further forbids troopers from voluntarily performing work or services connected with any political campaign and prohibits them from "publicly and openly espous[ing] the candidate of any man or measure." [13] Plaintiffs assert the term "measure" as used in the statute is indefinite and includes such things as legislative bills, initiatives, and constitutional amendments. It is undisputed that members of the Arkansas State Police are registered lobbyists and, thereby, allowed to lobby in support of or in opposition to pending legislation before the Arkansas Assembly without incurring disciplinary action for violating § 12–8–205. Additionally, members of the Arkansas State Police, including its Director, regularly appear before various legislative committees to testify for or against particular legislation as it relates to public safety. While statutes inevitably contain words or terms over which there may be disputed meanings, the Court finds a previous sentiment to be both applicable and worthy of repetition: "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, [sic] [14] without sacrifice to the public interest." *Letter Carriers*, 413 U.S. at 578–579, 93 S.Ct. at 2897. Moreover, whether the outermost boundaries of § 12–8–205 are imprecise is not of relevance here, as plaintiffs' conduct falls squarely within the core of the statute.

## III.

Finally, plaintiffs contend ARK.CODE ANN. § 12–8–205 violates the Equal Protection Clause of the Fourteenth Amendment. Specifically, plaintiffs contend § 12–8–205 deprives them their fundamental political rights, while allowing local and similarly situated state law enforcement officials to participate in political activities while off duty and out of uniform. In support of this argument, plaintiffs presented evidence that Arkansas Game and Fish Enforcement Division Officers ("AGF"), fully commissioned law enforcement officers with statewide jurisdiction, are allowed to participate in political activities while off duty pursuant to the Governor's Directive. Similarly, Arkansas Alcoholic Beverage Control Officers ("ABC") with statewide jurisdiction are allowed full political participation pursuant to the Governor's Directive. Further, county deputy sheriffs employed by the State, as well as municipal police officers, are allowed participation in political activities as outlined in Act 580 of 1991.

However, as previously noted by the Court, the Arkansas State Police is the single, most visible, day-to-day law enforcement body in the State of Arkansas. Although officers of the AGF and ABC at first glance appear to possess powers similar to those of state troopers, the Court finds compelling justification for the legislature drawing such distinctions.

## IV.

What the Court has said thus far largely disposes with any claim that ARK.CODE ANN. § 12–8–205 is unconstitutional as written. Nonetheless, the Court's inquiry does not end here as plaintiffs contend the statute, as applied to them, violates concepts of equal protection and due process.

---

**10.** Ark.Code Ann. § 12–8–205(d).

**11.** Ark.Code Ann. § 12–8–205(c).

**12.** Ark.Code Ann. § 12–8–205(b).

**13.** Ark.Code Ann. § 12–8–205(e).

**14.** Such language would be even worthier of repetition had Justice White not ended his phrase with a preposition.

In support of their equal protection claim, plaintiffs presented evidence of political involvement by state troopers in other districts of Arkansas who were not disciplined for similar violations of § 12–8–205.[15] Plaintiffs contend that if the State chooses to restrict their participation in political activities, which to some extent enjoys First Amendment protection, they must do so even-handedly. In other words, plaintiffs contend that to discipline troopers in only one locality for violations of § 12–8–205 and not in another is inconsistent with equal protection principles.

State Police Director, Defendant Goodwin, testified that the Arkansas State Police is administratively divided into 12 different districts throughout the State. Each district is commanded by a Troop Captain who is authorized to determine violations of § 12–8–205 and given discretion concerning whether disciplinary action should be pursued.[16] Accordingly, it is customary for complaints alleging § 12–8–205 violations to be resolved and remain at troop level,[17] thereby evading the Director's review. This approach has produced some rather diverse results.[18]

The Court distinguishes the case at bar from those situations in which a state has chosen to regulate differentially, with laws falling unequally on different geographic areas of the state. *See, Reeder v. Kansas City Bd. of Police Comm'rs.* (*"Reeder II"*), 796 F.2d 1050 (8th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987). On the contrary, § 12–8–205 on its face indicates legislative intent that all members of the state police be prohibited from participating, contributing, or soliciting support for any political campaign within the State of Arkansas.[19] Notwithstanding the discrepancies which have resulted from the statute's administrative enforcement, in light of testimony and the clear intent expressed in the statute, the Court finds the record to be absolutely void of any intentional or purposeful discrimination between persons or classes sufficient to sustain an equal protection claim. *See Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

Plaintiffs further contend they have been denied due process of law. In support of

---

**15.** A complaint was filed against Trooper G.R. Diffee stemming from his alleged involvement in political activity in Ouachita County. Investigation revealed two campaign signs had been displayed at Diffee's residence supporting candidates campaigning against the current Sheriff of Ouachita County. The Troop Captain found any violation of § 12–8–205 to be inconclusive and recommended no action be taken against the trooper.

A complaint was filed against Trooper J.C. Creecy for his alleged involvement in the Mississippi County Sheriff's race. An investigation revealed Creecy contributed a total of $250 from his business account to E.E. Cartwright's campaign fund. The trooper's name and occupation were published in a local newspaper as a contributor to the candidate's campaign. The Troop Captain determined any violation of § 12–8–205 was inconclusive and recommended no action be taken.

A complaint alleging political involvement was filed against Trooper W.W. Adams. Investigation of the incident revealed the trooper signed a petition urging the current Sheriff to seek re-election, which later appeared as an advertisement in a local newspaper. The complaint was subsequently withdrawn. The Troop Captain determined no violation of § 12–8–205 had occurred and recommended further action not be pursued against the trooper.

**16.** Each Troop Captain is authorized to administer disciplinary action resulting from investigations of alleged § 12–8–205 violations within his or her district of up to two weeks suspension without pay.

**17.** Under customary procedures, complaints alleging violations of § 12–8–205 would be reviewed by the State Police Director under two circumstances, both of which are illustrated by the facts in this case. One situation occurs when the Troop Captain determines the complaint cannot be handled at troop level. This is somewhat of a discretionary decision made by the particular Troop Captain, in light of his limited authority to administer the appropriate discipline. The other situation occurs when an officer is unhappy with the decision of the Troop Captain or the Staff Disciplinary Board and appeals the decision directly to the Director. If brought to his attention, the State Police Director has the ultimate say on the disposition of the complaint.

**18.** Compare the alleged violations and discipline recommended and received by plaintiffs with those of Troopers Creecy, Adams and Diffee. *See supra* notes 2 & 15.

**19.** Ark.Code Ann. § 12–8–205(f).

this position plaintiffs presented uncontroverted testimony regarding occasions when they had been detailed by their commanding officers to perform certain duties relating to Arkansas Governor Bill Clinton.[20] Such orders would appear to contradict the provisions set forth in § 12-8-205.[21] Even more persuasive is the Governor's Policy Directive # 9 [22]. This directive, issued by the State's chief executive, Governor Bill Clinton, was dispatched and posted at every divisional state police office in Arkansas pursuant to instructions from the State Police Director's Office.[23]

■ The Defendants now contend the Governor's Directive was only applicable to civilian employees of the state police and was not intended to encompass state troopers. The Court finds this to be a very tenuous position indeed,[24] and notes the principles presented by this case are analogous to those addressed by the Court in *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). In *Raley*, the Court held the Due Process Clause prevented the conviction of individuals who refused to answer questions of a state investigating commission due to certain express and implied assurances from the commission that they possessed a state law privilege to refuse to answer questions where in fact, the privilege was not available to them.

The Court distinguishes the criminal sanctions sought to be imposed in *Raley* but finds its· rationale applicable to this case.[25] Additionally, although the Court fails to find the type of "active misleading" demonstrated in *Raley* present in the case at bar, it does note that had plaintiffs been charged under a criminal statute, the Governor's Policy Directive would seem to afford an affirmative defense to the charge pursuant to Ark.Code Ann. 5-2-206(c).[26] As previously stated by the United States Supreme Court in *United States v. Laub*, 385 U.S. 475, 487, 87 S.Ct. 574, 581, 17 L.Ed.2d 526 (1967), "[o]rdinarily, citizens may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not at-

---

**20.** Plaintiff Tommy Wicker testified that pursuant to instructions from his commanding officer, he previously had driven to the Memphis Airport in his state police car to pick up Governor Bill Clinton. Mr. Wicker stated he then transported Governor Clinton to a Mini-Democratic Convention that was convening in Memphis, Tennessee and afterwards, had returned the Governor to the Memphis Airport. Plaintiff Mel Hensley testified that pursuant to orders from his troop commander he had transported Hillary Clinton from Memphis, Tennessee to Brinkley, Arkansas upon her return from a campaign journey. Both plaintiffs stated that in relation to the duties they performed in providing transportation for the Governor and Mrs. Clinton they had carried suitcases which they knew to contain various types of campaign literature.

**21.** *See* Ark.Code Ann. § 12-8-205(b) and (e).

**22.** *See supra* note 6.

**23.** The Memorandum attached to Governor's Policy Directive # 9 had been stamped by the Director's Office of the Arkansas State Police and contained the hand written directive "Troop Commanders: Post at Troop headquarters and be sure all personnel are aware of this."

**24.** Although Defendant Goodwin testified he viewed the Governor's Directive as pertaining only to noncommissioned personnel, he knew of no instance of a trooper being disciplined for a § 12-8-205 violation (except for plaintiffs) since the issuance of Governor's Directive in 1986. The Court finds it noteworthy that since the institution of these proceedings, Defendant Goodwin has requested an official opinion from the Arkansas Attorney General's Office inquiring "[whether]·Ark.Code Ann. § 12-8-205 prohibit[s] both civilian employees and commissioned officers from seeking public office." *See,* Op.Att'y Gen. No. 92-058 (May 20, 1992).

**25.** The Court notes that 12-8-205 is penal in nature, in that it makes no provision for a trooper to be merely suspended or fined, but states that violation of the statute is sufficient for the removal. Indeed, despite plaintiffs' extensive service to the Arkansas State Police, had Colonel Goodwin not intervened and rejected the recommendations made by Staff Disciplinary Board, all three plaintiffs would have been terminated.

**26.** Ark.Code Ann. § 5-2-206(c)(3) in pertinent part states:

It is an affirmative defense to a prosecution that the actor engaged in the conduct charged to constitute the offense believing that the conduct did not, as a matter of law, constitute the offense, if he acted in reasonable reliance upon an official statement of the law contained in [a]n official interpretation of the public servant or agency charged by law with responsibility for the interpretation or administration of the law defining the offense.

tach." Therefore, in light of the evidence presented, the Court is compelled to conclude that the Due Process Clause forbids penalties to be imposed under such circumstances.

## CONCLUSION

For the foregoing reasons, the Court finds ARK.CODE ANN. § 12–8–205 is not substantially overbroad or impermissibly vague and is, therefore, constitutional on its face. However, in regard to the acts for which plaintiffs were disciplined by Defendant Goodwin being contrary to the prohibitions contained in ARK.CODE ANN. 12–8–205, the Court finds that under the circumstances presented in this case, and for the reasons heretofore stated, such discipline violated plaintiffs' rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

Accordingly, the Courts finds as follows: In favor of plaintiff Tommy Wicker and against the defendant Tommy L. Goodwin in his individual capacity, and awards plaintiff Wicker compensatory damages in the amount of $2,917.95; in favor of plaintiff Larry Jackson and against defendant Tommy L. Goodwin in his individual capacity, and awards plaintiff Jackson compensatory damages in the amount of $2,917.95; and in favor of plaintiff Mel Hensley and against defendant Tommy L. Goodwin in his individual capacity, and awards plaintiff Hensley compensatory damages in the amount of $2,917.95. The defendant is also ordered to pay $5,518.75 in attorney's fees and $500 in costs to the plaintiffs jointly. Additionally, the defendant Tommy L. Goodwin, both individually and in his official capacity, is hereby enjoined from entering or maintaining any notation or record of the disciplinary action previously taken pursuant to ARK.CODE ANN. § 12–8–205 against plaintiffs Tommy Wicker, Larry Jackson, and Mel Hensley, as such action was taken in violation of plaintiffs' constitutional rights.

It is SO ORDERED.